NATIONAL LABOR RELATIONS BOARD, Petitioner, No. 87–3145,

v.

The ASBURY GRAPHITE MILLS, INC., Respondent.

NATIONAL LABOR RELATIONS BOARD, Respondent,

v.

The ASBURY GRAPHITE MILLS, INC., Petitioner, No. 87–3185.

Nos. 87–3145, 87–3185.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Sept. 29, 1987.

Decided Oct. 30, 1987.

Edward H. Feege, Duane, Morris & Heckscher, Allentown, Pa., for The Asbury Graphite Mills, Inc.

Linda Dreeben, Joseph H. Bornong, N.L.R.B., Washington, D.C., for N.L.R.B.

Before GIBBONS, Chief Judge, MANSMANN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this application for enforcement of a National Labor Relations Board order and petition for review of that order, we must decide if the Board properly determined the bargaining obligation of Asbury Graphite Mills, Inc. (Asbury). As a predicate to this determination, we must decide if the Board properly concluded that, at the time of the Union's election, the employees of the company constituted a substantial and representative complement of the company's projected future work force. If so, an immediate election of a bargaining unit was in order. The Board found that there was a substantial and representative comple-ment of employees sufficient to elect a bargaining unit. The company disputes that determination. We will grant the application for enforcement of the order and deny the petition for review.

## I.

Asbury is engaged in the production and sale of graphite and other carbon-based materials. In June 1984, Asbury bought a manufacturing plant in Kittanning, Pennsylvania. The plant required extensive renovation before production commenced in September 1985. The company hired its first employees in August 1984, and by May 1985, had hired twelve employees for both construction and production work. On March 4, 1986, the Teamsters Union filed a representation petition with the Board seeking certification of the company's production and maintenance employees as a collective bargaining unit. By March 25, 1986, the date of the representation hearing, Asbury had hired an additional laborer for a total of thirteen employees. These employees fell into four job classifications: laborer, utility employee, electrical/maintenance employee, and laboratory employee.

After the representation hearing, the Regional Director for the Board issued a decision and direction of election in which he found that the company's work force as of the time of the hearing was a representative and substantial portion of its predicted work force. He further determined that the employees performed tasks typical of the production and maintenance functions that the company expected them to perform in the future. The Board denied Asbury's request for review and conducted an election on May 23, 1986, at which time seven employees voted for the Union and six against.

On July 10, 1986, the Union filed an unfair labor practice charge with the Board alleging that Asbury had violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(1), (5), by refusing to recognize and bargain with the Union. On December

15, 1986, the Board issued a decision and order finding Asbury in violation of the NLRA. We must decide whether, under all the evidence and the ruling case law, the Board's order should be enforced. We are satisfied that there is substantial evidence in the record to support the Board's conclusion.

## II.

The parties are at odds over the proper standard of review. The NLRB contends that we must enforce the Board's bargaining order unless we find that the Board abused its discretion; the company claims that we should apply the substantial evidence rule. We need not embark upon a prolonged discussion of the appropriate standard of review because, first, the company is not challenging the Board's "substantial and representative complement" rule, but contests only the Board's application of the rule to the facts at hand; and second, the Supreme Court has recently supplied us with a concise statement of the standard we should apply. In a case involving obligations of a successor employer where, as here, the company challenged the Board's application of the substantial and representative complement rule, the Court stated:

> The Board, of course, is given considerable authority to interpret the provisions of the NLRA. *See NLRB v. Financial Institution Employees*, 475 U.S. 192, ——, 106 S.Ct. 1007, 1013, 89 L.Ed.2d 151 (1986). If the Board adopts a rule that is rational and consistent with the Act, ... then the rule is entitled to deference from the courts. Moreover, if the Board's application of such a rational rule is supported by substantial evidence on the record, courts should enforce the Board's order.

*Fall River Dyeing & Finishing Corp. v. NLRB*, —— U.S. ——, ——, 107 S.Ct. 2225, 2235, 96 L.Ed.2d 22 (1987). We first examine the rule to be applied in this case.

## III.

■ The substantial and representative complement rule is applied in the context of an initial representation election when, faced with a fluctuating work force, the Board must determine the appropriate time for an election. The Board will hold an election if the present employee complement is both substantial and representative of the employer's projected future work force. *See, e.g., NLRB v. Engineers Constructors, Inc.*, 756 F.2d 464 (6th Cir.1985); *Clement-Blythe Cos.*, 77 L.R.R.M. 2373 (4th Cir.1971); *enf'g* 182 N.L.R.B. 502 (1970). The rule represents an effort to balance "the objective of insuring maximum employee participation in the selection of a bargaining agent against the goal of permitting employees to be represented as quickly as possible." *Fall River Dyeing*, —— U.S. at ——, 107 S.Ct. at 2239.

■ The Board's determination of whether a given unit is substantial and representative of a projected future work force is said to depend on the size of the employee complement on hand at the time of the hearing, the time expected to elapse before a full complement is on hand, the rate and certainty of the projected expansion, and whether the projected additional jobs represent separate and distinct skills or functions. *See Witteman Steel Mills, Inc.*, 253 N.L.R.B. 320 (1980); *Clement-Blythe Cos.*, 77 L.R.R.M. 2373; *Frolic Footwear, Inc.*, 180 N.L.R.B. 188 (1969).

In examining the application of the rule to a given set of facts, the Supreme Court has recently placed its imprimatur on the precise method used by the Board in applying its rule in this particular case:

> In deciding when a "substantial and representative complement" exists in a particular employer transition, the Board examines a number of factors. It studies "whether the job classifications designated for the operation were filled or substantially filled and whether the operation was in normal or substantially normal production." See *Premium Foods, Inc. v. NLRB*, 709 F.2d 623, 628 (CA9 1983). In addition, it takes into consideration "the size of the complement on that date and the time expected to elapse before a substantially larger complement would be at work ... as well as the

relative certainty of the employer's expected expansion." *Ibid.*

*Fall River Dyeing,* —— U.S. at ——, 107 S.Ct. at 2239. The substantial and representative complement rule being stated and its rationale being explained, we now turn to the facts as found by the Board.

### IV.

It is not controverted that this case involves a fluctuation in the size of the work force. Neither is it seriously contested that at the time of the election, the company employed thirteen employees in the relevant job classifications and that the company projected a full complement of thirty to forty employees in those classifications by the end of 1986.

The company asserts that participation by these thirteen employees was insufficient to order the holding of an immediate election. The regional director concluded that this number was representative and substantial and the Board agreed. As stated before, deciding whether an expectation of extreme fluctuation should preclude the holding of an immediate election involves balancing the often conflicting policies of maximum employee participation in the selection of a bargaining agent and permitting employees immediate representation. In approving an application to determine the bargaining obligation of a successor employer, the United States Court of Appeals for the Fourth Circuit said that it had to balance the "concern to allow as many employees ... to participate in the selection of the union" as possible with the "significant interest of employees in being represented as soon as possible." *Clement-Blythe Cos.,* 77 L.R.R.M. at 2373.

██ We believe that there was substantial evidence in the record to indicate that at the time of the election there was one-third of the full employee complement the company hoped to employ nine months thereafter, that the work being then performed by the employees was representative of the company's future operations, that the existing employee complement spent a substantial amount of time doing typical production work, and that new hires would receive the same wages and benefits and be subject to the same conditions of employment as the March 1986 work force.

### V.

We now return to the standard of review. It cannot be controverted that the Board's "substantial and representative complement rule" is reasonable. As stated before, the company does not dispute the reasonableness of the rule. If it had, the challenge would have been fruitless because the rule has been discussed with favor in *Fall River Dyeing, supra,* where the Board was permitted to extend it to the successorship context. The only issue presented here is whether its application to the facts of this case is supported by substantial record evidence. We hold that it is.

The order of the NLRB will be enforced and the petition for review will be denied.